CULLEN, J.
The plaintiff and the defendant Whiting were real estate operators. They called the attention of the defendant Searles to an opportunity to purchase two plots of land in Flatbush, and to the profit to be made by cutting the plots into lots and selling them. Searles made the purchase, advancing all the money, and talcing the title in his own name. After the purchase was effected the parties entered into the following written agreement :
“ This agreement, made this 15th day of May, 1893, between Jno. E. Searles, of the first part, and Charles S. Whiting, John L. Bickford, and Winthtop M. Tuttle, parties of the second part, wit* nesseth, that inasmuch as the party of the first part is the owner of two certain plots of real estate on Newkirk avenue, in Flatbush, lying between Flatbush avenue and Ocean avenue, and is desirous of disposing of the same at the best advantage, it is therefore agreed between the party of the first part and the parties of the second part that, in consideration of said parties of the second part devoting to said business their best efforts to dispose of the said propeity, the party of the first ‘part hereby agrees that after he shall be reimbursed for the cost of said property and improvements, with interest at six per cent, per annum, the profits on said property shall be divided as follows: Fifty (50) per cent, to Jno. E. Searles, party of the first part; twenty per cent to Charles S. Whiting; twenty per cent, to John L. Bickford ; ten per cent, to Winthrop M. Tuttle. It being understood and agreed, that the prices at which the above property shall be sold shall be mutually agreed Upon between the parties of the first and second parts. This agre&nent to terminate on the 15th day of May, 1895, unless terminated or extended meanwhile by mutual consent.
“Jno. E. Searles,
“C. S. Whiting.
81 John L. Bickford.
“Winthrop M. Tuttle.”"
The lands were divided into lots, and sales made from time to time till the commencement of this action, in June, 1895, at which time a part of the lands remained unsold. The complaint alleged that the plaintiff and the defendants Whiting and Searles agreed that Searles should purchase the property, and advance the money requisite for the purchase and for preparing the property for sale; that plaintiff and Whiting should handle the property, and take charge of putting it on the market; and that the parties should share the profits in some reasonable proportion. The complaint further alleged the subsequent written agreement between the parties, and that sufficient land had been sold to reimburse the outlay of the defendant Searles. The plaintiff prayed judgment for an accounting between the parties, that he recover one-fifth of the excess of the proceeds of the sales over the expenditures made by the defendant Searles, and that the lands undisposed of be sold by a receiver, and he be paid one-fifth of the proceeds thereof. The dofendan! Searles answered, admitting the written agreement, denying that he had received enough from the sales to reimburse *608 him for his expenditures, but offering to pay the plaintiff his percentage or share of the profit on the land sold, estimating the cost of such lands at their proper proportion of the whole purchase money. The trial court found that Searles had been reimbursed his outlay from the proceeds of the sales. This finding of the court was excepted to by the defendant, and is criticised on this appeal. But, as the defendant has only appealed from so much of the judgment as awards costs against him, we think the correctness of the finding is not before us for review. Thereupon the court awarded judgment in favor of plaintiff for his one-fifth of the profits in the lands sold, and held that as to the lands unsold he had no interest therein, nor any right to share in them, and refused any relief as to such lands. The plaintiff has appealed from the judgment, in that it fails to award him any interest in the unsold land. The defendant Searles appeals from so much of the judgment as imposes upon him the costs of the action.
We think it plain that neither the plaintiff nor the defendant Whiting acquired any interest in the property itself. Whiting testified that his original proposition to Searies was that he (Whiting) was to have an interest in the property. The learned counsel for the plaintiff in his brief calls attention to this evidence, but does not appear to base upon it any claim that the parties were partners. The complaint proceeded on no such theory. It did not charge that the parties were partners, nor did it allege facts from which such relation would arise. The parol agreement first set forth in the complaint was that the defendant Searles would permit plaintiff and Whiting to handle the property, ^and take charge of putting it on the market. The fact that Searles was to permit them to handle the property is inconsistent with the claim that they had any interest therein, or right to control the same, except by permission of Searles. The agreement as alleged is strictly one of compensation for services,— that plaintiff and Whiting should have part of the profits in payment for tliei work. Even if they were to share specifically in the profits as such, this would not render the parties partners, as between themselves, or give the plaintiff and Whiting any interest in the land. Smith v. Bodine, 74 N. Y. 30. This being the case, the right of the plaintiff must be determined solely by the contract between himself and Searles, and the written agreement superseded any prior oral agreements, for it covered the whole subject-matter. The learned trial judge has said in his opinion that the plaintiff and Whiting were employed as brokers. This characterization of the plaintiff’s employment is vigorously assailed by counsel. We think this is a mere dispute about names. The plaintiff and Whiting were doubtless to perform more extensive services than those of a mere broker. They were to handle the property, and probably, to the extent of giving them a large compensation in case of sales, their services in calling Searles’ attention to the purchase of the property were recognized. Still, as already said, the contract was merely one of employment. We are therefore to determine when, under the contract, the plaintiff’s right to compensation accrued, and what was to be the measure of the compensation. The substantial *609 ■dispute between the parties is this: The plaintiff contends that, when enough lots had been sold to repay the cost of the property, all the land remaining unsold then constituted profit in which he was entitled to share, as well as in the surplus of money received on sales over and above the cost of the property. The defendant contends that profit only accrued upon sales and was to exist only in moneys realized therefrom. The question is not free from difficulty, and we may doubtless look at the position of the parties, to aid us in reachinga solution. The plaintiff insists that the profit arose from the fortunate purchase, and actually accrued at that time; that, as the plaintiff and his associate acted in the purchase, they should share in the profit that then accrued. There is no evidence to establish the fact upon which this claim is made, and we cannot assent to this reasoning. It-is difficult to see why profit might not as naturally occur from advantageous sales as from fortunate purchases. It might proceed from other causes still Property might appreciate in value intermediate the time of purchase and that of .sale, or by judicious subdivision, and, being properly marketed, realize an enhanced price. In fact, this last cause of profit would ■seem the one contemplated by the parties. The agreement recites that Searles is desirous of disposing of the property, and specifies as the consideration for giving plaintiff atid his associate a share of the profits their agreemenv.to devote their best efforts to dispose of the property. It was for their efforts in sales, not in the purchase, that they were to be compensated. The property was bought, not to hold as an investment, .but as a speculation, for quick sale, and the only profit contemplated by the agreement was that which should arise on a sale. The agreement necessarily implied a covenant on the part of Searles to sell at reasonable prices during the specified period, and for a refusal to sell he would be liable to the plaintiff. Jones v. Kent, 80 N. Y. 585. Mo breach of such covenant is alleged. But, as long as Searles was ready to carry out his agreement and sell, the right of the plaintiff and Whiting to compensation was wholly contingent upon success in selling. To award them a share of the land unsold would be to give them compensation which, under the terms of their contract, they had not earned, and to which they were not entitled. We think that the trial court properly construed the agreement, and that the plaintiff’s appeal should not succeed.
This action was brought in equity. Whether it should have been so brought is now immaterial. But, being in equity, the costs were in the direction of the court. The defendant Searles, in his answer, offered the plaintiff the same relief as was ultimately awarded to him. The defendant should therefore not have been mulcted in costs.
The judgment appealed from should be modified by sinking therefrom the recovery of costs by the plaintiff, and as modified affirmed, without costs to either party.
‘ All concur.