(40 Misc. Rep. 461.)

### HUNT v. McCABE et al.

#### (Supreme Court, Trial Term, New York County. April, 1903.)

1. PARTNERSHIP—WHAT CONSTITUTES—EVIDENCE.

Plaintiff accepted employment as general superintendent of a firm of subcontractors for an annual salary and one-third of the net profits, including one-third of the plant, so far as it was paid for out of the profits. He used a power of attorney to open bank accounts for the firm, and drew their contract moneys, but was nowhere described in the contract as a partner, except that he was given, as superintendent, full power over the work, "as if he were a partner." *Held*, that where the subcontractors declares the contract at an end because of a dispute with the general contractor, and discharge the superintendent, the latter is not entitled, as a partner, to an injunction restraining the subcontractors and other parties in interest from interfering with or removing the plant.

Action by Rufus C. Hunt against James F. McCabe and others. Motion to continue injunction pendente lite. Denied.

Hatch, Debevoise & Colby, for plaintiff.

Kellogg & Rose, for defendants.

GILDERSLEEVE, J. On February 21, 1900, John B. McDonald entered into a contract with the city of New York, acting by its board of rapid transit railroad commissioners, for the construction of a rapid transit railroad in said city. The firm of L. B. McCabe & Bro., composed of Lawrence B. McCabe and the defendant James F. McCabe, became subcontractors under Mr. McDonald for the completion of sections 13 and 14 of the said rapid transit railroad, commonly called the "Subway," and entered upon the performance of the work. On November 29, 1901, the Messrs. McCabe entered into a contract with Mr. McDonald, which recites the desire of both "to provide a more

efficient superintendence of the execution of said contract by said L. B. McCabe & Brother." It was agreed that Mr. McDonald should nominate, and that Messrs. McCabe should appoint, a general superintendent, with full power in all respects as if he were an active partner in the said firm of L. B. McCabe & Bro., in charge of the performance of the work required to be done under the contract. In pursuance of the latter agreement, Rufus C. Hunt, the plaintiff herein, was appointed such superintendent. On December 4, 1901, Messrs. McCabe entered into a contract with the plaintiff, whereby the latter was appointed and employed by them as general superintendent of the work to be performed, and, as compensation for these services to be rendered, they agreed to pay to him a salary of $7,500 for the first year, payable in monthly installments, and after the first year at the rate of $5,000 until the completion of the work, and, as additional compensation, "one-third of the net profits which shall accrue to them under said contract with said McDonald, including one-third of all the plant, machinery and other property and appliances paid for out of the proceeds of said contract." On the 7th day of December, 1901, the said Messrs. McCabe gave to the plaintiff a power of attorney, bearing date on that day, to open bank accounts in the name of the firm, and to deposit therein all money due to the firm under the contract, and to draw and pay out such money for the purposes of said contract. Thereafter the said Lawrence B. McCabe transferred to the defendant herein, James F. McCabe, his interest in the said contract between the firm of McCabe & Bro. and the said John B. McDonald, with the consent of Mr. McDonald; and the defendant James F. McCabe thereupon gave to the plaintiff another power of attorney, containing practically the same authority as that contained in the power of attorney first mentioned. Unlike, however, the first power of attorney, it contained one or two minor limitations of plaintiff's right to act for defendant, and was by its terms subject to revocation. These powers of attorney had the approval of Mr. McDonald. The work proceeded under the agreements and powers of attorney above mentioned until March 18, 1903, when the defendant McCabe notified the plaintiff of the revocation by him of the power of attorney he had given. In the notice of revocation, no mention was made of the power of attorney executed by the Messrs. McCabe. A portion of the plant used in carrying on the work was purchased from the defendants the Rand Drill Company and the Eastern Stone Company. These defendants, not having been paid therefor in full, have become attachment creditors; and the defendant the sheriff has taken, in behalf of these creditors, possession of the plant, and has keepers in charge thereof. It is the claim of the defendant McCabe that said plant has cost about the sum of $90,000, all of which has been paid, except the sum of about $30,000. The defendant McCabe alleges that Mr. McDonald failed and refused to carry out and perform the terms of his contract, in that he failed to make the payments required, and failed to allow the full value of the work and materials performed and furnished thereunder, and that Mr. McDonald was otherwise guilty of a breach of their agreement. The said McCabe further alleges that the plaintiff has failed and refused to carry out the terms of the contract made and entered into between him and

the firm of L. B. McCabe & Bro., in that he negotiated loans in the name of this defendant, giving notes therefor, signed in the name of the defendant by him as attorney, without right or authority, and also absented himself from the line of the work, and engaged in other work for and on behalf of Mr. McDonald. By reason of such alleged breaches, the defendant McCabe elected to, and did, on March 20, 1903, stop all work on the contracts, assumed to discharge plaintiff from his employment, and since March 21, 1903, has done no work on the job. A specific breach of contract by Mr. McDonald is alleged by the defendant McCabe to have occurred as follows: Just prior to the receipt by plaintiff, Mr. Hunt, of the said notice of revocation, the Rapid Transit Subway Construction Company had delivered to the plaintiff a check or draft under the contract for work performed, and the plaintiff had deposited this check with the Bank of Washington Heights, to the credit of the defendant McCabe. Owing to the revocation, a duplicate original of which was filed with said bank, the plaintiff could not withdraw the proceeds of said check. The Subway Company, having heard of the revocation of plaintiff's power, stopped payment thereof, and it was therefore not honored by the firm of Belmont & Co., the drawee. It was after this that the defendant McCabe declared the contract of McCabe & Bro. with Mr. McDonald broken, by reason of the failure to pay him the amount of said check. The defendant McCabe further asserts that he has a claim for work performed and materials furnished to Mr. McDonald amounting to more than $500,000. On the other hand, it appears by the replying affidavits that "the Rapid Transit Subway Construction Company had advanced to the defendant James F. McCabe more than one hundred and eighty-three thousand dollars ($183,000) over the amount due under the contract." This action is brought to enjoin the defendants from interfering with the use of the plant and from removing the same, and for a decree that all persons claiming through or under them are not entitled to the possession thereof, and for the appointment of a receiver of the contract above mentioned, entered into on December 4, 1901, between the plaintiff and the firm of L. B. McCabe & Bro. A preliminary injunction has been granted, and the motion now under consideration is for the continuance of said injunction during the pendency of this action.

What is the precise status of the plaintiff? What rights did he acquire under the powers and agreements above mentioned? What title or interest has he in the plant? Was he a partner of the defendant McCabe, or an employé? We must look to the agreement of December 4, 1901, between the Messrs. McCabe and the plaintiff, and to the interpretation of the agreement by the parties as indicated by the methods and practices observed in the progress of the work, for an answer to these questions. Nowhere in the contract is the word "partner" mentioned, except in describing the plaintiff's powers as superintendent, wherein it states, as we have seen, "with full power over the said work, in all respects, as if he were an active partner." We have also seen that the agreement provides that the salary and the interest in the firm's assets were to be received as "compensation," and that he accepted "employment," and agreed

"to perform faithfully all the duties of such employment." It cannot be said that plaintiff, by the terms of the aforesaid agreement, acquired any vested interest whatsoever in the plant during the continuance of the work. For that period it must be held that the plaintiff's interest was limited to the sums provided to be paid to him as compensation for the services to be rendered by him as superintendent. It was not until the termination of the work, and after the payment of debts and liabilities, that plaintiff could have a vested interest in the firm's assets. When that time should arrive, he was entitled, in addition to the sums received by way of salary, to one-third of the net profits as ascertained, and to one-third of the plant. The plaintiff was not a partner of Mr. McCabe. Manifestly, he was not so considered by any of the parties in interest; else why were the powers of attorney given to him? Had he been a partner, no power of attorney would have been necessary to enable him to accomplish all and even more than he was able to do under the power conferred by those instruments. An interest in the net profits, as compensation for services to be rendered, does not make a person entitled to the same a partner. Smith v. Bodine, 74 N. Y. 30; Merchants' National Bank v. Barnes, 32 App. Div. 92, 52 N. Y. Supp. 786; Martin v. Riehl, 27 Misc. Rep. 112, 58 N. Y. Supp. 141. The testimony before me as to Mr. McCabe's alleged insolvency leaves that question in too much doubt to award the plaintiff equitable relief upon that ground. Further discussion seems unnecessary, since we have reached the conclusion that plaintiff was an employé. If plaintiff was wrongfully discharged from his employment, he has an adequate remedy at law for whatever injury he has suffered. If the defendant McCabe committed a breach of his contract with the plaintiff, the latter's remedy is by an action at law for damages. He cannot maintain an action in equity. We do not undertake here to adjudicate the rights of the attachment creditors in the plant. We do hold that the plaintiff's contingent interest in the plant is not such as entitles him to seek relief in a court of equity.

For these reasons, the motion to continue the temporary injunction must be denied, and the temporary injunction set aside, with $10 costs.

Ordered accordingly.